IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**ROBERT MITCHELL,**

    **Plaintiff,**

v.

**TIME WARNER, INC., and TIME WARNER CABLE, INC.**　　　　　Civil Action No. 3:09-00148

    **Defendants.**

## COMPLAINT

Plaintiff, Robert Mitchell (hereinafter "Plaintiff"), individually and as representatives of a Class of similarly-situated individuals, brings this Complaint against Time Warner Inc. and Time Warner Cable Inc. (hereinafter "Defendants" or "Time Warner") and alleges the following:

### INTRODUCTION

1. This is a class action brought on behalf of all persons who purchase premium cable services from Defendants in the State of West Virginia. Defendants' premium cable customers have no choice but to pay a rental fee for a "cable box" in order to view the cable television for which they pay a separate fee. Defendants' actions constitute an unlawful tying arrangement resulting in an impermissible restraint of trade in violation of both state and federal law.

2. Defendants' activities have and will continue to threaten to have adverse competitive effects on interstate commerce and on commerce within the State of West Virginia.

### THE PARTIES

3. Plaintiff is a citizen of the State of West Virginia who resides in Bridgeport, West Virginia.

4. At all times relevant hereto, Plaintiff has been a subscriber of premium cable services provided by Defendants.

5. Plaintiff brings this action on her own behalf and on behalf of the following class of persons:

> All persons in the State of West Virginia who subscribed to Time Warner Cable Inc. (or previously Time Warner Inc.) for premium cable television services and paid a monthly rental fee for an accompanying cable box ("the Class").

Excluded from the Class are the Defendants; officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs or assigns of Defendants; and any federal, state or local governmental entity, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs. Plaintiff reserves the right to modify or amend this Class definition if discovery and/or further investigation so necessitate.

6. Defendant Time Warner Inc. is a Delaware corporation with its principle place of business located in New York, New York. Upon information and belief, Time Warner Inc. indirectly owns more than 80% of Time Warner Cable Inc. Prior to Defendant Time Warner Cable Inc. (¶ 7 *infra*) becoming a publicly-held corporation in 2007, Defendant Time Warner Inc. provided cable services to Plaintiff and the Class as alleged below.

7. Defendant Time Warner Cable Inc. is a Delaware corporation with its principle place of business in Stamford, Connecticut. Defendant Time Warner Cable Inc. became a publicly-held corporation in 2007.

8. The illegal and anti-competitive actions discussed below were committed by Time Warner Inc. and subsequently by Time Warner Cable Inc. once it became a wholly-independent public company. Both entities are jointly and severally liable for the claims set forth herein.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 in that Plaintiff, on her own behalf and on behalf of the Class, assert claims under the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2.

10. This Court has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1367.

11. Venue is proper in the Southern District of West Virginia under 28 U.S.C. § 1391 and 15 U.S.C. § 22.

## FACTUAL BACKGROUND COMMON TO ALL CLASS MEMBERS

12. Time Warner is the second largest provider of cable services in the United States. As of September 30, 2008, Time Warner provided cable television services to approximately 13.3 million customers in 31 states.

13. In the year ending December 31, 2008, Time Warner's cable television services generated $16.3 billion in revenue.

14. Customers subscribe to Time Warner for cable services and pay a monthly fee based on the level of service provided. Plaintiff and the Class are Time Warner customers who have elected to receive "premium" services including, but not limited to, high definition ("HD") television services, digital cable services, digital On-Demand services, digital video recorder ("DVR") services and premium movie channels such as HBO, Showtime or Cinemax.

15. Customers such as Plaintiff and the Class pay a higher monthly fee for cable services than customers who elect to receive only "basic" or "standard" cable television services.

16. In addition to paying a higher monthly fee for premium cable television service, Plaintiff and the Class are also required to pay a monthly rental fee to Time Warner for a cable

box. The cable box consists of a converter box and cable descrambler. The cable box is required in order for Plaintiff and the Class to use the premium services for which they pay a higher monthly fee. In other words, the premium channels can only be viewed by, and premium services can only be used by, Time Warner customers who also have a Time Warner cable box.

17. Time Warner requires Plaintiff and the Class to rent a cable box directly from Time Warner and not from any other source, even though cable boxes, which would readily permit Plaintiff and the Class to view the Time Warner premium channels and use the Time Warner premium services, are available on the open market. Thus, Time Warner ties its premium cable services to the cable box which it requires Plaintiff and the Class to rent. Importantly, the premium cable services and the cable box are separate and distinct products.

18. Although cable boxes are manufactured by many different companies, Motorola and Scientific Atlanta dominate the market and sell their cable boxes to various cable companies including Time Warner. If not for the tying of the premium cable services to the cable box, Plaintiff and the class could purchase, or rent, a cable box from the manufacturer or provider of their choice and use that box to view premium channels or use premium services provided by Time Warner.

19. The choice to use other cable boxes is not available to Plaintiff or the Class because of Time Warner's practice of tying the premium cable services to the cable boxes. In addition, Time Warner refuses to sell the cable boxes to its customers thereby forcing customers to pay monthly rental fees which eventually, within a number of months, exceed the value of the cable box. Thus, by tying the premium services to the cable box, Time Warner forces Plaintiff and the Class to pay a significantly greater sum for cable television than would be required if the two products remained distinct.

20. Plaintiff believes Time Warner purchases cable boxes from manufacturers, such as Motorola and Scientific Atlanta, at a fixed and relatively low cost only to turn around and rent those boxes to Plaintiff and the Class, with full knowledge that the Class, because of Time Warner's improper conduct, has no choice but to pay the rental fees charged by Time Warner. Plaintiff believes the cable box market involves a significant amount of interstate commerce.

## CLASS ACTION ALLEGATIONS

21. <u>Class Definition</u>: Pursuant to Fed. R. Civ. P. 23(b), Plaintiff brings this action on behalf of themselves and all others similarly situated, as members of the proposed Plaintiff Class. The proposed Plaintiff Class is defined as follows:

> All persons in the State of West Virginia who subscribed to Time Warner Inc. or Time Warner Cable Inc. for premium cable television services and paid a monthly rental fee for an accompanying cable box.

22. <u>Numerosity</u>: The members of the Class are so numerous that their individual joinder would be impracticable in that: (a) the Class includes thousands of individual members; (b) the precise number of Class members and their identities are unknown to Plaintiff but are well known to Time Warner and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the thousands of individual Class members to be individually represented in separate actions; and (d) the relatively small amount of damages suffered by some of the Class members do not make it economically feasible for those Class members to file an individual action to protect their rights.

23. <u>Commonality/Predominance</u>: Common questions of law and fact predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Time Warner is liable to Plaintiff and the Class for violations of federal antitrust laws;

      b.      Whether Time Warner has established an unlawful tying arrangement for the rental of cable boxes, in violation of state and federal laws;

      c.      Whether Time Warner's actions have caused damages to Plaintiff and the Class;

      d.      Whether Time Warner should be enjoined from further violations of the state and federal laws; and

      e.      Whether Time Warner is liable to the Plaintiff and the Class for treble damages as a result of its violation of federal antitrust laws.

24.    _Typicality_: Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all Class members have been injured by the same wrongful practices engaged in by Time Warner. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

25.    _Adequacy_: Plaintiff will fully and adequately assert and protect the interests of the Class. Plaintiff has retained counsel who is experienced in class actions and complex mass tort litigation. Neither Plaintiff nor her counsel have interests contrary to or conflicting with the interests of the Class.

26.    _Superiority_: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is in the millions of dollars, the individual damages suffered by each of the Class members as a result of the wrongful conduct by Time Warner are too small to warrant the expense of individual lawsuits. Even if the individual damages were sufficient to warrant individual lawsuits, the court system would be unreasonably burdened by the number of cases that would be filed.

27.    Plaintiff does not anticipate any difficulties in the management of this litigation.

## COUNT I
## VIOLATION OF THE SHERMAN ANTITRUST ACT – UNLAWFUL TYING

28. Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

29. The Sherman Antitrust Act makes it unlawful to enter into a contract in restraint of trade or commerce. 15 U.S.C. § 1, *et seq*. Congress has granted a private right of action to individuals harmed by violations of this Act. 15 U.S.C. § 15.

30. Plaintiff, on her own behalf and on behalf of the Class, seeks to recover damages they suffered as a result of Time Warner's violation of the Sherman Antitrust Act.

31. Time Warner improperly ties and bundles its premium cable services with the required rental of a cable box. Specifically, Time Warner contracted with Plaintiff, and all Class members, to provide premium cable services but only on the condition that Plaintiff, and all Class members, also pay a monthly rental fee to Time Warner for a cable box necessary to view and use the premium services.

32. No member of the Class, including Plaintiff, can unbundle or untie the two products, i.e., premium cable services and the cable box.

33. As a result, Plaintiff is forced to pay rental fees for the cable box in addition to the increased fees they pay for premium cable services. Time Warner's conduct is even more egregious given that Time Warner is the largest provider of cable services in West Virginia and the United States. In fact, in many areas of West Virginia, it is believed that Time Warner is the sole provider of cable services.

34. At all times relevant hereto, Time Warner has maintained, and exerted sufficient economic and market power to coerce Plaintiff and the Class to pay rent for the cable box and accept the tied products.

7

35. Time Warner's improper tying of the cable box to the premium cable service harms competition. Upon information and belief, the cable box market is dominated by two manufacturers, both of which sell products to Time Warner. Since Plaintiff and the Class can only rent a cable box directly from Time Warner, there is little incentive for other manufacturers to enter the market, and those that do are precluded from renting or selling their products to Plaintiff or the Class at lower, market-driven prices.

36. There is a market for cable boxes separate and apart from the Time Cast premium cable services; the two products are separate and distinct products. In fact, an individual can find cable boxes for sale on the open market today, but Time Warner refuses to permit a customer to use his own cable box when subscribing to Time Warner's premium services.

37. At all times relevant hereto, Time Warner has maintained sufficient power in the cable market to force Plaintiff and the Class to accept the rental arrangement which they otherwise would not accept absent Time Warner's extraordinary economic and market power.

38. Time Warner's conduct has a substantial impact on interstate commerce in the market for cable boxes.

39. Time Warner's bundling and tying of premium cable services and the cable box is an unreasonable restraint of trade in violation of the Sherman Antitrust Act.

40. Time Warner's conduct has been, and continues to be, the direct cause of damage to the Plaintiff and the Class.

41. There is no lawful business justification for Time Warner's conduct.

## COUNT II
## VIOLATION OF THE WEST VIRGINIA ANTITRUST ACT – UNLAWFUL TYING

42. Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

43. The West Virginia Antitrust Act makes it unlawful to enter into a contract in restraint of trade or commerce. W. Va. Code §§ 47-18-1, *et seq.* The Legislature has granted a private right of action to individuals harmed by violations of this Act. W. Va. Code §§ 47-18-9.

44. Plaintiff, on her own behalf and on behalf of the Class, seeks to recover damages they suffered as a result of Time Warner's violation of the West Virginia Antitrust Act.

45. Time Warner improperly ties and bundles its premium cable services with the required rental of a cable box. Specifically, Time Warner contracted with Plaintiff, and all Class members, to provide premium cable services but only on the condition that Plaintiff, and all Class members, also pay a monthly rental fee to Time Warner for a cable box necessary to view and use the premium services.

46. No member of the Class, including Plaintiff, can unbundle or untie the two products, i.e., premium cable services and the cable box.

47. As a result, Plaintiff is forced to pay rental fees for the cable box in addition to the increased fees they pay for premium cable services. Time Warner's conduct is even more egregious given that Time Warner is the largest provider of cable services in West Virginia and the United States. In fact, in many areas of West Virginia, it is believed that Time Warner is the sole provider of cable services.

48. At all times relevant hereto, Time Warner has maintained, and exerted sufficient economic and market power to coerce Plaintiff and the Class to pay rent for the cable box and accept the tied products.

49. Time Warner's improper tying of the cable box to the premium cable service harms competition. Upon information and belief, the cable box market is dominated by two manufacturers, both of which sell products to Time Warner. Since Plaintiff and the Class can only rent a cable box directly from Time Warner, there is little incentive for other manufacturers to enter the market, and those that do are precluded from renting or selling their products to Plaintiff or the Class at lower, market-driven prices.

50. There is a market for cable boxes separate and apart from the Time Warner premium cable services; the two products are separate and distinct products. In fact, an individual can find cable boxes for sale on the open market today, but Time Warner refuses to permit a customer to use his own cable box when subscribing to Time Warner's premium services.

51. At all times relevant hereto, Time Warner has maintained sufficient power in the cable market to force Plaintiff and the Class to accept the rental arrangement which they otherwise would not accept absent Time Warner's extraordinary economic and market power.

52. Time Warner's conduct has a substantial impact on interstate commerce in the market for cable boxes.

53. Time Warner's bundling and tying of premium cable services and the cable box is an unreasonable restraint of trade in violation of the West Virginia Antitrust Act.

54. Time Warner's conduct has been, and continues to be, the direct cause of damage to the Plaintiff and the Class.

55. There is no lawful business justification for Time Warner's conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, demands judgment in her favor and against Defendants as follows:

a. For an Order certifying the Class pursuant to Fed. R. Civ. P. 23 appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff counsel for the Class;

b. For an Order that Time Warner violated the Sherman Antitrust Act, 15 U.S.C. § 1, et seq.;

c. For an Order that Time Warner violated the West Virginia Antitrust Act, W. Va. Code § 47-18-1, et seq.;

d. For an Order enjoining Time Warner from continuing the practice of tying premium cable services to the rental of a cable box from Time Warner;

e. For an award of all compensatory and other damages suffered by Plaintiff and the Class;

f. For an award of all statutory damages under both the Sherman Antitrust Act and the West Virginia Antitrust Act;

g. For an award of all costs incurred by Plaintiff in pursuing this action;

h. For an award of reasonable attorneys' fees; and

i. For any other relief the Court deems reasonable.

## JURY DEMAND

Plaintiff demands a trial by jury of all factual issues.

BAILEY & GLASSER LLP

/s/ John W. Barrett
John W. Barrett, Esq.
W. Va. Bar No. 7289
jbarrett@baileyglasser.com
Michael L. Murphy, Esq.
W. Va. Bar No. 10888
mmurphy@baileyglasser.com
209 Capitol Street
Charleston, WV 25301
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Fax: (304) 342-1110

Attorneys for Plaintiff